Good morning. I apologize for my voice. I have a cold and it seems like everyone else does as well. Who's the court? Edward Adams for Mr. Tu in this matter. Mr. Tu is seated at the table. Do you need anything but Jones v. Flowers? Pardon? Do you need anything except Jones v. Flowers? It came down after the briefs. And I thought, boy, it's like Christmas in July when that comes down. Yes. We come before the court. Is there any more to the case but Jones v. Flowers? I'm not familiar with that case, Your Honor. I'm sorry. I have not read it. Oh, that's a case that's a lot like yours and your guy West. That's my problem. This Supreme Court has decided. The fact pattern was, in fact, unique at the time that we briefed this and at the time that I last checked. The fact pattern of a reasonable reliance upon changed methods of notice was a unique thing. I couldn't find this in any of the cited materials. And you have not read the Supreme Court decision this term in Jones? I have not and I should have, Your Honor. I would be glad to read that and brief it. Do you have a cite for that, Your Honor? Yes. 547 U.S. 1, 2006. Thank you, Your Honor. I appreciate that. Basically, we come before this Court seeking a remand. A remand back to the NTSB and administrative law judge to have the securities heard on its merits, merits which we believe would prove Mr. Tu as not in violation of any of the regulations cited. In fact, the regulations cited were not even helicopters. The underlying case is important for Mr. Tu. He has made his livelihood as an experienced helicopter instructor and pilot. And as such, this is international consequences for his business. Why didn't Mr. Tu, after realizing that he hadn't received the certified letter, informing him that an investigation was underway by the FAA, do one of two things. A, delegate someone at his business to sign the certified letters. Or B, tell the FAA, I do not accept certified letters. Send them to me by another means. My answer to that, Your Honor, would be, first of all, Mr. Tu does not acknowledge that he ever received any certified mail. In fact, he signed an affidavit that he was. No, no, no, no. He received the letter indicating that an investigation was commencing by regular mail, correct? That's correct. All right. But he also knew that he'd gotten two certified mail letters that had been returned unclaimed. So he would have known that. He wouldn't have known that. But the government would have. The government did know. And in fact, the government had five different times they had communicated thoroughly with Mr. Tu by first-class mail.    They were communicating thoroughly with Mr. Tu. They were communicating thoroughly with Mr. Tu. It is, Your Honor. Well, perhaps we should hear from the government and see what they have to say. Very well. I'll just wait for the time to bring it up. May it please the Court, my name is James Barry, and I represent the government in this case. And it's the government's position that the NTSB properly concluded that Mr. Tu failed to establish good cause. Counsel? Yes. On Jones, I spoke of Christmas in July. It was actually Christmas in April. The Supreme Court decided in April that the government must try alternate means of giving notice if it knows that the correspondence has not reached its target. That was a case where certified mail was sent to the taxpayer. He never responded. The letters came back undelivered. They went ahead and foreclosed on his property because he didn't pay his taxes. And the Supreme Court said the foreclosure is no good, violates due process, violates Mullane v. Hanover Bank because the government knew that, in fact, he had not received notice, and it did not take alternative measures, such as ordinary mail, to establish a likelihood that he actually received notice of the case. I can't see why Jones v. Flowers isn't on all fours in controlling. If there's some way to distinguish it, would you educate me? Well, I too, regrettably, must admit that I'm not familiar with it. You haven't read Jones either? No, Your Honor. I must admit that I have not. I'd be willing to read it and provide further briefing on behalf of the agency. Let's just look at the common sense of it. Okay. Who had Judge Bea's questions kind of highlight what the problem is for me? You have a file, the government has a file that shows that the certified letters are returned, is not delivered. And the appellant doesn't have any knowledge of those letters, and you know it. So why is it the responsibility on you to make sure that to give him notice when you know he hasn't actually received it? Well, Your Honor, if you go back over the history of the mailings in this particular case, the agency sent the letters of investigation, as Judge Bea mentioned, by certified mail. They were returned, and then we followed it up with regular mail. Following that, we issued, yes, Your Honor. But at that point, McHugh contacted you, right? He acknowledged the receipt of the letters of investigation, correct? He, yes, Your Honor. All right. Now, forget about Jones. You haven't read it. The other counsel hasn't read it. Maybe you don't keep up on these developments as much as we do. But I'll read you a case from 1950, Mullane. The means employed must be such as, and this is a key phrase, one desirous of actually informing the absentee might reasonably adopt to accomplish it. After you got back the information in your investigative letters that the certified letters had not been received by Mr. Two, what possible reason was there for the agency not to use regular mail to give him the 20-day notice of appeal to the NTSB? Well, let me address that this way, Your Honor. Under our statute, which is obviously Title 49, under our governing statute there's a provision at 49 U.S.C. 46103B, which authorizes us to provide service of orders by certified mail. And we comported with the provisions of that statute by mailing the order by certified mail. But the Hanover Bank and Trust comported with the provisions of newspaper publishing punctiliously, they were punctiliously found to be wrong because of due process. In other words, due process trumps your regulations. In that particular case, though, it was the publication, a publication method was used, and it was determined that that method was ineffective constitutionally to provide notice. That's different than this case. In this particular case, we provided notice of the orders by certified mail, and we were of the belief, and I believe properly so, that that was a means reasonably calculated. No, he didn't get it. Okay. As I said, going back over the history of the case, we recognized that the certified mail with respect to the letters of investigation were returned. And then we issued the notice of proposed certificate action. He did receive the regular mailing of the notice of certificate action. And it was the agency's belief, and properly so, that once he knew that we were interested in pursuing an action against him, that he would remain vigilant with respect to all types of mailings, particularly certified mail, which is of heightened significance and to track delivery. He didn't get it. He wasn't there, and you knew that he didn't get it. That's the problem. We knew that he It's like calling somebody's phone number and saying it's disconnected, saying, well, we gave him notice. And if I may add, why did you think that he would be vigilant? What did you know about Mr. Tu's business, whether he was in town, whether he was out of town? Whether he was – I mean, to be vigilant, you have to assume certain capabilities. This is why he should have been vigilant, because we issued the notices of proposed certificate action. I'm never there. I guess I'm probably as vigilant as the ordinary guy, maybe not up to snuff fully, but not that many people are. I never get my certified mail. It's a big nuisance. I have to drive out to a rural post office on a Saturday during the few hours they're open to get it. I never get the certified mail because I work during the day. I'm not home when the mailman comes. The Supreme Court in Duesenberg recognized the constitutional adequacy of certified mail, but beyond that. And this is a chief difference in this case. After receiving the notices, he specifically requested that we issue the orders. And we did, and we did so very promptly after his request. Did he request that he be mailed things by certified mail? No, but he did request the issuance of the orders. And by virtue of that request, it was incumbent upon him to remain vigilant as to their issuance. He's not supposed to move around. He could have informed the FAA as to his whereabouts, which could have resulted in the FAA providing these letters to him, perhaps even in China by registered mail, which is another means of supporting the FAA statute. I don't think you can have the post office deliver to you in the evening when you come home. They leave notices of attempted delivery, which then makes it incumbent upon you to go to the post office. If you can get a half day off to do it or do it on a Saturday. Or you could get an agent to do it on your behalf, which is apparently what Mr. Tu was doing insofar as his regular mail is concerned. But if I may follow up on that point, he requested the issuance of these orders. We got his attention. He knew he was a subject of an enforcement action. Within 10 days of this request he made for the orders, we issue the order in case number 24. Within 21 days, we issue the order in case number 26. And you notice the fact that he had not gotten them, right? We learned later that he did not get them by virtue of the returning of this mail to the FAA as undelivered. And I think it's difficult to understand how Mr. Tu relied exclusively on first class mail anyway, given the heightened significance of certified mail. I mean, as I indicated earlier, certified mail is typically used for the service of documents with heightened significance because it provides a means for tracking delivery. When you get a certified mail slip, that should alert you or the recipient that it must be something important because it's a subject of ‑‑ because it's actually being tracked. I learned in practice, deadbeats never accept any of their certified mail because they think it's from creditors. They're not going to assume it's from the government. They're going to assume it's from a creditor. Now, I don't know anything about this fellow's credit, but a lot of people don't get certified mail because it's a big nuisance. The guy in flowers lived in another town at the time. It would have been highly impractical. And in some cases, they don't get it because they think it's likely to be something that they have no interest in getting. If I may underscore that point, Mr. Tu acknowledged the significance of certified mail himself on page 17 of his brief when he said that certified mail typically includes personal, legal, and financial items. And that's why he didn't have an agent arrange for the picking up of that mail. He knew that certified mail ‑‑ What do you mean by agent? I'm thinking I get certified mail. It's always an irritating nuisance. And I guess in my case, it's usually a company that wants me to vote a proxy form, which I don't care about. But I don't have any agent to get it. I have to drive out Saturday. How do you hire agents? What does that mean? Well, Mr. Tu is a business owner, unlike you and I. And he basically, apparently, according to his brief, arranged for an employee to pick up his first class mail. It's my submission to this court. He could have easily have done so with respect to a certified mail and that his failure to do so represented a lack of diligence. Are you arguing that he deliberately evaded getting notice of this? I don't have enough evidence. To be perfectly honest, Judge Schroeder, I don't have the evidence to make that submission. And so, therefore, no. My argument is simply that he could have availed himself if he exercised the appropriate amount of diligence. Did he have to? You knew that he wasn't receiving his certified mail. And the answer is absolutely yes. Okay. He had to pick up that mail because he was on notice of that mail by virtue of the notices of attempted delivery. And he failed to take the proper actions in picking up that mail. He also failed to inform the FAA that he was going to go on travel. And if I may add, the NTSB's good cause conclusion in this case, that is, that Mr. Tooth failed to establish good cause, is neither arbitrary nor capricious. And for that basis, Your Honor, I'd like to request this court to affirm the NTSB's decision. Thank you for hearing me today. If I may, just a couple of notes, Your Honor. On page 40 and page 80 of the evidence record, it references the decision, the election of Administrator's Counsel, the same based on the record they chose to send mail by first class as well as certified because he was shown as not to have received it. They chose to alter the statutory method. They then continued for five different methods of, five different times communicating with Mr. Tooth by first class. On 80, on the footnote on CR 80, will show that they received back the card, the green card that goes for certified mail, and they never received anything back showing notice of received by certified mail. Mr. Tooth, and then they take, when the all-important times of issuing of orders of suspension, which was the only time since the order here, he had already responded very promptly to anything received first class. Then they changed to certified mail only. And they had, and they said they assumed that he would now be on notice. How could they assume he would be on notice? I mean, did he receive, the government seems to be suggesting that he received some kind of notice that there was undelivered certified mail from the NTSB. Is that? Both the NTSB and Counsel, and we have, in fact, a brief, both briefs show that the items that were left, the mail items that were left showing that you received certified mail or should receive certified mail, according to the NTSB, even the dissenting members, the two dissenting members, and even the concurring member, that the emphasis on the sender block was either blank or was unreadable. Anyone who would have picked that up would never have known it came from the FAA, even though they had been alerted to pick up, and due diligence to pick up anything from FAA so that he could then respond to it. There was no reason to assume, on his part, that he would ever receive anything from certified mail. As to avoiding service, the underlying case on this, if you, and we briefed this a little, even though it's not what's before the Court, the underlying case, he's alleged to have violated regulations that only pertain to fixed-wing aircraft. The only, they, on 91-119, B and C, only pertain to fixed-wing aircraft. The only part of that regulation that affects helicopters is subpart B, and it negates any obligation under part B and C. So in order for, on case law, on rentals that you have before you on the brief, in order for him to have been found violating an altitude restriction would have been that he would have had the actual hazard, not potential, but actual hazard in flying in such an altitude with a helicopter. That was not in this case. He knew that wasn't in this case. He asked to bypass his opportunity to have a settlement conference, an informal conference, because he knew the case was undefensible on their part. He knew that he, very defendable on his part and unprosecutable on their part. Why were you going? That every green card he got, where they leave the green card on account of you not being home to get your certified mail, did not say it was from the FAA? It did not say it was from the FAA. Nowhere did it say it was from the FAA. So an assumption that he was being, on the notice of proposed certificate of actions that he received, the allegations were, in effect, that he was flying two helicopters at the same time in two different places on the same day and violating regulations that don't apply. Why would he? It doesn't make any sense to him that he would try and avoid service or avoid having this thing read on his underlying merits. That's exactly what he wanted. That's what he asked for. If this were to stand, fortunately we do have flowers now, but if this were to stand, the administration would be, administrators would be allowed to obfuscate an already confusing system. Both the dissenting and the concurring said it was a very, very confusing system. They would be able to obfuscate this and yet hold the recipient, the pilot whose life depended upon a certificate rating, hold him accountable to the letter of the law. For that reason, we ask that this be remanded. And thank you for your sight. Thank you, Your Honor. The case just argued is submitted for decision. We'll hear the.
judges: Schroeder, Kleinfeld, Bea